**UNITED STATES of America,**

v.

**Jonathan FERNANDES, Defendant.**

**No. 14–CR–06043 EAW.**

United States District Court,
W.D. New York.

Signed Sept. 29, 2014.

Jennifer M. Noto, U.S. Attorney's Office, Rochester, NY, for United States of America.

Robert G. Smith, Federal Public Defender, Rochester, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### BACKGROUND

Defendant was arraigned on March 11, 2014, on a criminal complaint charging him with methamphetamine-related drug-trafficking offenses and possession of a firearm in furtherance of the drug-trafficking crimes. Attached to the complaint is an affidavit of a law enforcement officer detailing the investigation into Defendant's alleged activities through the use of at least two confidential sources. (Dkt. 1).

On April 3, 2014, Defendant was indicted on 13 counts of drug crimes in violation of various provisions of 21 U.S.C. §§ 841, 843, 844 and 856, and firearm counts in violation of 18 U.S.C. § 924(c)(1)(A). (Dkt. 10). Defendant has been in pretrial detention since his initial arrest on March 11, 2014. (Dkt. 1 & 7). Prior to the return of the indictment, a detention hearing was held on March 25, 2014, before United States Magistrate Judge Jonathan W. Feldman, at which Judge Feldman granted the Government's motion to detain Defendant on the grounds that no condition or combination of conditions would reasonably assure the safety of any other person and the community (Dkt. 7). Judge Feldman determined that the Government had not met its burden to prove that Defendant should be detained based upon risk of flight.

On August 28, 2014, Defendant filed a motion before this Court to revoke or amend Judge Feldman's detention order. (Dkt. 29). On September 5, 2014, the Government filed a response to Defendant's motion, and also cross-moved seeking Defendant's detention based upon both risk of flight and dangerousness. (Dkt. 31). A hearing was held before the Court on September 8, 2014, at which time each party

proffered evidence and submitted arguments with respect to their positions. In addition to considering the party's written and oral submissions, the Court also has reviewed the audio transcript of the detention hearing held before Judge Feldman on March 25, 2014. The Court also has considered the Pretrial Service investigation and report prepared by the United States Probation Office and dated September 5, 2014, which recommended detention, and the investigation and findings are incorporated herein.

As set forth below, although there may be a combination of conditions that would reasonably assure Defendant's appearance if he were released, the Government has met its burden with respect to dangerousness, and therefore Defendant shall remain detained pending the trial in this matter.

### LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 et seq., authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. The procedures and standards for release or detention of a person such as Defendant pending trial are set forth at 18 U.S.C. § 3142. A defendant awaiting trial must be released unless the release will present a risk of flight or dangerousness, or both, and no set of conditions can reasonably eliminate those risks. 18 U.S.C. § 3142.

In this case, there is a rebuttable presumption pursuant to § 3142(e)(3) that no condition or combination of conditions will reasonably assure the appearance of Defendant and the safety of the community if Defendant is released. This rebuttable presumption arises because a grand jury has returned an indictment against Defendant that charges him with drug crimes for which a maximum term of imprisonment is ten years or more, and with offenses in violation of 18 U.S.C. § 924. 18 U.S.C. § 3142(e)(3). See United States v. Contreras, 776 F.2d 51, 55 (2d Cir.1985) (a grand jury indictment establishes probable cause for purposes of the rebuttable presumption under the Bail Reform Act, and when faced with an indictment, the Court does not need to make an independent finding of probable cause). Notwithstanding this rebuttable presumption, the burden of persuasion remains with the Government to demonstrate dangerousness by clear and convincing evidence, and risk of flight by a preponderance of the evidence. United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir.1985). The Government may sustain its burden by reliance on the presumptions of flight and dangerousness. United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir.1991).

■ Moreover, "a defendant must introduce some evidence contrary to the presumed fact[s] to rebut the presumption." Id. If a defendant does introduce rebuttal evidence, the presumption does not disappear, but rather "continues to be weighed along with other factors to be considered when deciding whether to release a defendant." Id. The factors that a court must consider in making this determination include the following: (1) the nature and circumstances of the charged offenses; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including such matters as the person's family ties, employment history, length of residence in the community, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of any risk of danger if the person is released. 18 U.S.C. § 3142(g).

■ In reviewing a detention order of a Magistrate Judge, a District Judge should

not simply defer to the judgment of the Magistrate Judge, but rather must reach his or her own independent conclusions. *United States v. Leon,* 766 F.2d 77, 80 (2d Cir.1985). "When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra,* 165 F.Supp.2d 478, 481 (W.D.N.Y.2001).

### *RISK OF DANGER*

■ The Government contends that Defendant presents a risk of danger due to the nature of the charges and strength of its case, as well as the evidence proffered by the Government with respect to Defendant's attempts to intimidate witnesses.

■ With respect to the alleged intimidation of witnesses, there is no question that some of the evidence relied upon by the Government consists of conduct of members of Defendant's family. For purposes of evaluating any danger presented by Defendant's release, it is his conduct that is at issue. Moreover, some of the evidence relied upon by the Government consists of efforts by Defendant and/or his family members to review publicly available information in a purported effort to assist with Defendant's defense. A Defendant's legitimate efforts to investigate allegations made by the Government and defend against charges in an indictment cannot be used to establish a risk of danger.

However, based on the evidence proffered by the Government, Defendant crossed the line from legitimate efforts to launch a defense to the criminal charges, to illegitimate efforts to tamper with evidence and threaten witnesses. Perhaps most troubling is a recorded jail call from January 6, 2014, when Defendant spoke to his sister Mindy Stevens and her significant other Andrej Konopski. During the course of that call, Ms. Stevens revealed to Defendant that she had located the names of confidential sources through publicly available information and ascertained that one of the individuals was an inmate at the Green Correctional Facility. Mr. Konopski then got on the phone and suggested to Defendant that he would mail packages of information to "25 guys up in Green" for the apparent purpose of disclosing to these random inmates that they had a witness who was cooperating with law enforcement in their midst. Defendant replied to this proposed plan: "There you go. Do it. Do it .... Fuck yeah. Do it!" (Dkt. 31 at 17).

When questioned about this information at the hearing before this Court on September 8, 2014, the only explanation offered by Defendant through his counsel was that he did not mean what he said in that recorded conversation. This is simply not sufficient to rebut the presumption of dangerousness, particularly when considered against the backdrop of the other evidence of witness intimidation proffered by the Government. *See United States v. Vendetti,* 10–CR–360A, 2011 WL 2133770, at *4, 2011 U.S. Dist. LEXIS 56575, at *10–11 (W.D.N.Y. May 26, 2011) (efforts to persuade witnesses to testify falsely is relevant to assessing a defendant's danger to the community).

Indeed, after the hearing on September 8, 2014, and while the matter was under advisement by the Court, a superseding indictment was filed charging Defendant, along with Ms. Stevens and Mr. Konopski, with witness tampering in violation of 18 U.S.C. § 1512(b)(1) and 18 U.S.C. § 2. (Dkt. 38). The superseding indictment reflects a finding of probable cause by a grand jury that Defendant engaged in witness tampering, which only further supports a finding that Defendant presents a danger to others and the community.

Moreover, the nature of the charges against Defendant and the strength of the Government's evidence support a finding of dangerousness. "[I]t is clear that the harm to society caused by narcotics trafficking is encompassed by Congress' definition of 'danger.'" *United States v. Leon,* 766 F.2d at 81. *See also United States v. Strong,* 775 F.2d 504, 506 (3d Cir.1985) ("The statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community"); *United States v. Boorman,* 130 F.Supp.2d 394, 400 (W.D.N.Y.2001) (where it appears that substantial part of defendant's livelihood is dependent on drug trafficking, it is likely that "defendant would return to drug trafficking if released"); *United States v. Trammel,* 922 F.Supp. 527, 532 (N.D.Okla.1995) (defendant's ties to the community are not sufficient to overcome the danger that defendant presents to the community in light of "strong evidence" that defendant recently engaged in serious drug trafficking offense and threatened confidential informant).

The Government's proffer regarding the underlying evidence supporting the charges in the indictment concerning Defendant's drug trafficking activities coupled with possession of illegal firearms is sufficient to compel pretrial detention on the basis of danger. In sum, given the nature and circumstances of the case, the strength of the evidence against Defendant, and the evidence of Defendant's efforts to intimidate or threaten witnesses, the Government has established by clear and convincing evidence that Defendant presents a danger to others and the community and there are no conditions that would reasonably assure the safety of others and the community. As a result, Defendant must be detained pending trial.

### RISK OF FLIGHT

■ There is a two-step inquiry with respect to risk of flight. "First, the court must make a finding as to whether the defendant presents a risk of flight if not detained. Second, if the court finds that a defendant is likely to flee, then the court must proceed to the second step of the inquiry, namely, whether there are conditions or a combination of conditions which reasonably will assure the presence of the defendant at trial if he is released." *United States v. Shakur,* 817 F.2d 189, 194–95 (2d Cir.1987) (citations omitted).

Here, the Government argues that Defendant presents a flight risk due to the fact that he is facing 65 years in statutory mandatory minimum sentences if convicted after trial, and the potential for life imprisonment. (Dkt. 31 at 15). Defendant has an extensive criminal history as reflected by the Pretrial Services report and investigation, and at the hearing before this Court on September 8, 2014, Defendant's counsel advised that he did not dispute the prior criminal convictions reflected by that report. The Pretrial Services report and investigation revealed that there were bench warrants issued in connection some of Defendant's prior convictions, but the United States Probation Office reports that its investigation has revealed that none of those bench warrants resulted from Defendant's failure to appear at a scheduled court appearance. Similarly, the Government contended at the hearing on September 8, 2014, that Defendant had failed to appear in connection with a criminal charge in November 2009, in Bath, New York, resulting in an arrest warrant being issued. However, Defendant disputed this allegation, contending that it was his father who allegedly engaged in the behavior, and the Government subsequently withdrew its allegations in that regard. Indeed, Defendant insists that he has al-

ways appeared as required at any court proceeding, and there is nothing in the record before the Court to indicate otherwise.

Of course, the burden of proof for flight risk is preponderance of the evidence. Given the charges and potential prison term that Defendant is facing, coupled with the presumptions under the Bail Reform Act due to the nature of the charges against the Defendant, the Court finds that Defendant presents a risk of flight. However, the Court believes that there are likely conditions (albeit stringent conditions) that could be put in place to secure Defendant's appearance. Indeed, the initial Pretrial Services report prepared after Defendant's arrest on March 24, 2014, had recommended various conditions to secure Defendant's appearance. Therefore, the Court finds that the Government has met its burden to prove that Defendant is a flight risk, but it also finds that there may be conditions that could be imposed to secure Defendant's appearance. However, given the Court's findings with respect to risk of danger, the Court need not analyze the necessary conditions, as Defendant must be detained due to his risk of danger.

## CONCLUSION

For the foregoing reasons, Defendant shall remain detained pending the trial in this matter.

SO ORDERED.