**UNITED STATES of America Plaintiff**

**v.**

**Francisco Santana BURGOS, aka, "Paquito", Defendant.**

**No. CR. 00–734(JAG).**

United States District Court, D. Puerto Rico.

May 30, 2001.

Aixa Maldonado–Quiñones, Assistant U.S. Attorney, San Juan, PR, for Plaintiffs.

Luis Lugo–Emanuelli, Fajardo, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff United States of America has moved the Court to revisit Magistrate Judge Justo Arenas's order granting bail to codefendant Francisco Santana Burgos. At Santana Burgos' detention hearing, the United States proffered for the Court the evidence in its possession to justify Santana Burgos' detention. The United States argued that Santana Burgos is a risk of flight and a threat to the community since he is a drug trafficker who has access to narcotics and firearms. The Magistrate Judge set bail in the amount of $150,000.00; along with other terms and conditions.

Santana Burgos contends that this Court lacks jurisdiction to review the Magistrate Judge's decision because the United States did not appeal from the Magistrate Judge's decision within the 10 days required by local rule 510.2.

Santana Burgos argues that in *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), the United States Supreme Court held that a Court may establish a waiver of the right to appeal a Magistrate's decision or report when the appealing party that disagrees with the

Magistrate's decision did not object to the Magistrate's report within the applicable time period. Santana Burgos concludes that if local rule 510.2 grants a party a period of 10 days to object to a Magistrate Judge's report, then, if the term expires, the Court lacks jurisdiction to entertain the objections *sua sponte.* Santana Burgos misapprehends the Supreme Court's ruling in *Thomas.* In *Thomas,* the Supreme Court held that, notwithstanding a petitioner's failure to file objections, a district judge has the constitutional authority to review *sua sponte* the entire record *de novo* and dismiss the petition on the merits.

> "The rule merely establishes a procedural default that has no effect on the magistrate's or the court's jurisdiction. The district court has jurisdiction of the case at all times. [ . . . ] Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of the party, under a *de novo* or any other standard." *Thomas,* 474 U.S. at 154, 106 S.Ct. 466.

Santana Burgos' argument, therefore, has no merit and the Court will *sua sponte* review *de novo* the contested Detention Order. *United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir.1990).[1]

▇ We begin with the indictment, which states that Santana Burgos is one of eleven individuals charged with a conspiracy to possess with intent to distribute in excess of one hundred fifty kilograms of cocaine, one kilogram of heroin and multi-kilogram quantities of marijuana, all in violation of 21 U.S.C. § 846.

The Bail Reform Act of 1984, 18 U.S.C. § 3142(f)(1)(c) and (e) establishes the presumption that no condition or combination of conditions will reasonably assure the appearance of the accused as required and the safety of the community if there is probable cause to believe that the person committed an offense for which the term of imprisonment of ten or more years is prescribed in the controlled substance Act, 21 U.S.C. § 801. *United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991). Here, the presumption is triggered because the quantities of drug alleged in the indictment mandate a ten year minimum sentence. 21 U.S.C. § 801 et seq.

The legal presumption has a "significant practical effect." *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985). The presumption, however, does not shift the burden of persuasion to the defendant; the government retains its burden throughout. Once the presumption is triggered, however, the defendant is required to carry the burden of production. *Id.* at 380–384.

The presumption established is that "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which the maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, (21 U.S.C. 801 et seq.)" 18 U.S.C. 3142(e). The presumption created is of "flight" and "danger." *Id.* at 381.

Once the presumption is triggered, the defendant is required to produce "conflict-

---

**1.** The Court also notes Judge Robert Keeton's enlightened opinion in *United States v. Phillips,* 732 F.Supp. 255, 258–59 (D.Mass.1990), requiring "the Court to exercise independent consideration of all facts properly before it."

ing evidence" to undercut the legislative purpose of the presumption *Id.* at 383. *Jessup* adopted an "intermediate position" requiring the defendant to produce "conflicting evidence" as to "danger" and "flight." The Court then "determine[s] on which side the evidence preponderates." *Id.* (citing *Wright v. State Accident Ins. Fund,* 289 Or. 323, 613 P.2d 755, 759–60 (1980)).

The Court in *Jessup* explained that "[i]n order to 'rebut' the presumption, the defendant must produce some evidence; the magistrate or judge should then still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight." Even after a defendant has produced evidence to rebut the presumption, "the presumption does not disappear, but rather retains evidentiary weight—the amount depending on how closely defendants' case resembles the Congressional paradigm, *Jessup* at 387—to be considered with other relevant factors." *United States v. Palmer–Contreras,* 835 F.2d 15, 17 (1st Cir.1987).

Finally, in making its determination after receiving the rebuttal pursuant to section 3142(g), the judicial officers must consider, among other factors, "the nature and circumstance of the offense," "weight of the evidence," "history and characteristics of the person including . . . character, physical and mental conditions, family history . . . past conduct." *Id.*

In the indictment, the Government charges a drug conspiracy to possess with intent to distribute illegal narcotics. The Government proffered a superseding indictment describing certain conversations between Santana Burgos, and co-defendant Eric Laguna Santana. According to the indictment, on August 1, 2000 Laguna Santana instructed Santana Burgos where to get marijuana and at what price to sell it. On August 4, 2000 Laguna Santana,

accompanied by Santana Burgos, called co-defendant Abraham Cruz Semprit and offered him a brand new .45 caliber pistol. On August 5, 2000 Santana Burgos accompanied by Cruz Semprit, called codefendant, Eudalberto Tapia–Meléndez, to discuss the price and availability of kilograms of cocaine, and the purchase of firearms. On August 8, 2000 Santana Burgos, called Tapia–Meléndez, to inquire how much would Tapia–Meléndez charge him for transporting 25 kilograms of cocaine into the continental United States. On that same date Cruz Semprit accompanied by Santana Burgos, called Laguna Santana, to discuss the transportation of the cocaine into the continental United States, and Santana Burgos' acquisition of kilograms of cocaine at $17,200 per kilogram. Later that evening, Santana Burgos called codefendant Santiago Rivera Suarez, a/k/a "Chago", to inform him that he had obtained for him good quality cocaine.

On August 25, 2000, Cruz Semprit accompanied by Santana Burgos, arrived at the Pollo Tropical Restaurant in Plaza Centro Shopping Center, Caguas, P.R., at which time Cruz Semprit offered undercover Agent, Edgardo Nieves Ortega, Sergeant of the FBI task force, two kilograms of heroin for $160,000. Furthermore, the Government presented the testimony of Agent Nieves. Agent Nieves clearly identify Santana Burgos and testified that he had the opportunity to visually identified Santana Burgos during the August 25th drug transaction. Agent Nieves stated that during the transaction Santana Burgos remained inside a Jeep Vitara in which Cruz Semprit arrived. Agent Nieves further testified that Santana Burgos as well as Cruz Semprit were recorded on video and audio tape during the drug transaction.

Counsel for defendant challenges Agent Nieves' visual identification of Santana

Burgos during the August 25th drug transaction. Furthermore, counsel for defendant argues that Santana Burgos is not a danger to the community or a risk of flight, since he has strong family ties. He further maintains that the Pre-trial Services Report recommended that the Court grant bail to Santana Burgos.

Given the criteria that the Court must consider to ultimately grant or deny bail, in this case "the nature and circumstances of the case" favor detention. Santana Burgos stands accused of a very serious charge wherein he is attributed a prominent role in a conspiracy to possess with intent to distribute multi-kilo quantities of heroin, cocaine and marijuana. The weight of the evidence appears to be quite strong—a testimony of an undercover agent who visually identified Santana Burgos during a drug transaction and a superseding indictment based on tapes corroborating his participation in drug transactions. The Court acknowledges that some of the elements of Santana Burgos' history and characteristics such as his strong family and community ties, weigh in favor of a grant of bail. Other characteristics, however, such as past conduct, militate in favor of denial of bail. For example, Santana Burgos was on probation by state authorities for attempted aggravated illegal appropriation during the indictment. Evaluating all the criteria as a whole, the nature and circumstances of the offense and the weight of the evidence override the favorable criteria rooted in characteristics of the person.

The Court is particularly concerned with Santana Burgos' role first as a supplier of drugs and weapons to drug sellers and later as a smuggler of drugs into the continental United States. In the Court's view, these circumstances would pose a danger to the community should Santana Burgos' be released on bail.

In sum, bail is not warranted in this case. Here the drug amounts are significant, the Government's case appears to be strong, and the length of the jail sentence coupled with Santana Burgos' ties with drug traffickers (as appears from the testimony of Agent Nieves and from the superseding indictment) all point to a risk of flight. The standard of proving "flight risk" by preponderance of the evidence, *United States v. Patriarca,* 948 F.2d 789, 793 (1st Cir.1991) and of "danger" to the community by "clear and convincing evidence," *United States v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987), has been met. The presumption of danger to the community is present in this case since "it is clear [that] the harm to society caused by narcotic trafficking is encompassed within Congress' definition of 'danger'." *United States v. De León,* 766 F.2d 77, 80 (2nd Cir.1985). See generally *Palmer–Contreras,* 835 F.2d at 17–18 (affirming a detention order under the 3142(e) presumption, notwithstanding defendant's strong family ties, because of the long duration of the conspiracy). The facts here fall squarely within the congressional concern that "flight to avoid prosecution is particularly high among persons charged with major drug offenses" and that "drug traffickers often have established ties outside the United States ... [and] have both the resources and foreign contacts to escape to other countries." *Jessup,* 757 F.2d at 384.

The conclusion is inescapable: Santana Burgos has failed to rebut the presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. 3142(e). The evidence preponderates in favor of detention. *Jessup,* 757 F.2d at 383.

Franscisco Santana Burgos is to remain detained without bail.

IT IS SO ORDERED.